**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0802n.06
No. 08-1971

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 17, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| | ) | |
| CARLOS DEWAYNE WILLIS, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

BEFORE: NORRIS, CLAY, and SUTTON, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Defendant Carlos Willis appeals from the sentence that he received after pleading guilty to conspiring to distribute narcotics in violation of 21 U.S.C. § 846. In his view, the district court erred in three respects: first, it miscalculated his criminal history and failed to consider whether that history "over-represented the seriousness" of his criminal acts, U.S.S.G. § 4A1.3(b)(1), p.s.; second, it failed to reduce the offense level based upon his minimal or minor role in the conspiracy, U.S.S.G. § 3B1.2; and, third, it relied too heavily upon the sentencing guidelines and did not pay sufficient attention to the sentencing considerations contained in 18 U.S.C. § 3553(a). For the reasons that follow, we hold that the sentence imposed was procedurally and substantively reasonable. We therefore **AFFIRM** the judgment.

## I.

Willis was named in the first count of a four-count superseding indictment, which charged several individuals with conspiring to "distribute approximately 9,500 pills of 3, 4 Methylenedioxymethamphetamine ("MDMA") – 'Ecstasy,' a Scheduled I controlled substance, in violation of Title 21 United States Code, Section 841(a)(1). All in violation of 21 U.S.C. § 846."

According to portions of the pre-sentence report ("PSR") to which Willis lodged no objection, he traveled from St. Louis to Detroit with co-defendant Kinzell Stanciel and others to purchase MDMA. Once the group arrived, they met at the supplier's home to complete the purchase. Unknown to the conspirators, in August 2007 a confidential informant had alerted law enforcement to drug trafficking at a Best Western Hotel located in Allen Park, Michigan. Drug task force agents established surveillance of the hotel on August 28 and observed three vehicles that appeared to be involved in trafficking. Willis and an unidentified woman were in one vehicle. Stanciel and co-defendant Mario Harrell were in separate vehicles. The officers saw Willis pass something through his window to Harrell while their respective cars were stopped at a nearby gas station.

The officers later stopped the cars containing Stanciel and Willis. The search uncovered 9,300 tablets of MDMA in Stanciel's possession. No contraband was found in the vehicle occupied by Willis. Harrell was arrested later in the evening after he was observed meeting another individual whom the officers suspected of being involved in the drug trafficking conspiracy.[1]

---

1    William Elias Khami was identified as this individual and was charged with possession with intent to distribute MDMA, 21 U.S.C. § 841(a), and of being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). The government later concluded that Khami was not involved in drug trafficking and dismissed that count of the indictment.

After his arrest, Willis cooperated with the authorities and pleaded guilty without the benefit of a written agreement. This cooperation is reflected in the three-level reduction to his offense level for acceptance of responsibility. U.S.S.G. § 3E1.1. At his plea hearing, the government elicited from Willis that he knowingly became involved in the conspiracy to purchase MDMA and that he "traveled from St. Louis to Detroit for the purpose of serving as a lookout for Mr. Stanciel."

At sentencing, the district court considered Willis' criminal history as detailed in the PSR as well as the objections to it lodged by defense counsel. We note at the outset that all of his prior convictions occurred in Missouri. At the time of his arrest in this case, Willis was 29 years-old and lived in St. Louis.

The first conviction used by the district court to calculate the appropriate criminal history category occurred in April 1995 when Willis was only sixteen. He pleaded guilty to possession of a controlled substance and received a sentence of two years of probation. Probation was suspended in November 1995 when he violated its terms and an "intensive" probation was imposed in its place. He violated its terms also and on May 15, 1997 his probation was revoked and he was sentenced to seven years of incarceration. He was released in September 1997 and placed on probation for five more years.

He violated probation again in May 1998. In September 1999, he was sentenced to seven years of imprisonment with credit for time served. He was paroled on June 10, 2002. His parole for this offense was suspended on February 3, 2006 and he was returned to prison. His sentence for this offense expired on July 1, 2006.

3

The second conviction considered by the district court occurred on May 27, 1998, when Willis was on parole from his first offense. It, too, was a drug possession offense. Willis was sentenced to eight years of supervised release to be served concurrently with his other conviction. As with his 1995 conviction, he was paroled on this offense on June 10, 2002, but violated it on February 3, 2006. His sentence expired on April 12, 2007.

A third drug-trafficking offense, which Willis disputes, occurred on February 20, 2003. The probation officer who prepared the PSR supplied the following additional information in an addendum after Willis lodged an objection to consideration of this conviction:

> The Probation Department has attached a copy of the Sentence and Judgment for this conviction, Case Number 031-712. The arrest photo is also attached. The defendant's signature is affixed to the Judgment. The Probation Department has also included a copy of the defendant's signature obtained by the Probation Department on March 17, 2008. The presentence report will remain as written and the Probation Department will rely on the Court to resolve this issue.

Willis pleaded guilty to that crime in 2005 and received a ten-year sentence, which was suspended and he was placed on three years of probation. The PSR notes that, due to an administrative error, the Missouri Board of Probation and Parole never received the paperwork related to this offense and defendant was never placed on active supervision.

His fourth and final conviction was on February 23, 2003 for operating a motor vehicle without a license; he received 120 days with credit for time served.

The PSR calculated that defendant had a criminal history score of 12, placing him in category V. However, at the sentencing hearing the government conceded that the two criminal history points assessed for the motor vehicle conviction should not be counted and that the 1995 conviction for

4

cocaine possession should result in two points, not the three recommended in the PSR. As a result, Willis' criminal history category dropped to level IV.

The district court sentenced Willis to 121 months of incarceration, which was the low-end of the advisory guidelines range of 121 to 151 months. The court also imposed three years of supervised release, an assessment of $100, and recommended that Willis enter a comprehensive drug treatment program while incarcerated. This timely appeal followed.

## II.

## A.

We begin by addressing defendant's contention that his criminal history was miscalculated and over-represents the seriousness of his criminal conduct. "[W]e . . . review a district court's calculation of the advisory sentencing Guidelines as part of our obligation to determine whether the district court imposed a sentence that is procedurally unreasonable." *United States v. Bullock*, 526 F.3d 312, 315 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). In doing so, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *Id.* at 315-16; *see also United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009). An improper criminal history calculation represents a significant procedural error that, if committed, would constitute an abuse of discretion requiring reversal. *United States v. Shor*, 549 F.3d 1075, 1077 (6th Cir. 2008).

Willis focuses on the fact that he has no "independent memory" of being sentenced on September 2, 2005 for possession of a controlled substance.[2] However, the district court found the Sentence and Judgment from Missouri's Twenty-Second Judicial Circuit, signed by Willis, to settle the matter "loud and clear, beyond a reasonable doubt." While his criminal history is admittedly murky due in part to his numerous parole violations, we review this finding for clear error. We detect none. The district court simply chose to credit a judicial document signed by defendant over Willis' own unsubstantiated recollection.[3]

A district court has the authority to depart downward if it finds that "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1), p.s. Willis contends that the district court should have applied this provision to him because Missouri, where his previous crimes were committed, imposes relatively harsh penalties for possession of small amounts of cocaine.

At sentencing the district court heard extensive argument concerning over-representation and explicitly declined to reduce Willis' criminal history category based upon its "exercise of discretion." The court then explained why, in its view, the departure was not warranted: "he has not . . . taken advantage of the breaks that he got and has continued just to be involved in violations." Where, as

---

2   He also states that he was being held in a detention facility in St. Louis at that time but offers no documentation to support this claim. By contrast, the PSR indicates that he was paroled on June10, 2002 and that his parole was not revoked until 2006. Defense counsel did not object to the paragraphs containing this information and thus we assume that Willis was not in custody at the time of the disputed offense.

3   We note in passing that Willis' criminal history category would have remained at IV even if the district court had agreed with him and not counted this disputed conviction when calculating his criminal history.

here, the district court recognizes that it has the discretion to depart downward but declines to do so, we will not review its decision. *See, e.g., United States v. Puckett*, 422 F.3d 340, 345 (6th Cir. 2005), cert. denied, 126 S.Ct. 1935 (2006).

**B.**

The sentencing guidelines allow the district court to adjust the base offense level downward if it concludes that defendant's role in the offense was either minimal or minor. U.S.S.G. § 3B1.2. The accompanying commentary explains that this provision "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment., (n.3(A)). Like many other adjustments to the base offense level included in the guidelines, "whether a defendant is entitled to a sentence reduction pursuant to U.S.S.G. § 3B1.2 depends heavily on factual determinations, which we review only for clear error." *United States v. Groenendal*, 557 F.3d 419, 423 (6th Cir. 2009); *see also* U.S.S.G. § 3B1.2, comment. (n.3(C) (this determination is "heavily dependent upon the facts of the particular case")).

At sentencing, the district court made these observations:

In looking at the facts, I had a chance to see them through the eyes of the various Defendants including obviously, more specifically, Mr. Willis. I don't find a minor role or a minimal role here. I think he was into it and drove all the way up with the others and wasn't just a lookout but was very much – or a driver but was very much involved in the transaction . . . .

Willis recites a number of considerations that he believes lead to a different conclusion: Stanciel was the person targeted by the confidential informant; no narcotics were found in his car;

7

and he acted solely as a lookout who was paid a flat fee rather than a share of the profits of any subsequent drug trafficking. Individuals whose role is limited remain eligible for relief under this guidelines section:

> [A] defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline.

U.S.S.G. § 3B1.2 comment. (n. 3(A)). In Willis' view, a lookout is no more culpable than a person who transports or stores drugs. Since the latter is eligible for the adjustment, he should be too.

As already explained, we accord great deference to the district court when we review guidelines decisions that are "heavily dependent upon the facts of the particular case." Even if we discount the testimony of Harrell, who stated that he acted as the middleman in this transaction and delivered the MDMA to "a guy named Willis," there is still ample evidence to support the district court's decision not to grant this adjustment. It is undisputed that Willis traveled from St. Louis to Detroit in order to participate in an MDMA trafficking conspiracy. He was present when the drugs were exchanged and, according to the PSR, he "passed something through the car window to Harrell."[4] In short, the district court's conclusion that Willis was "more than a driver" is not clearly erroneous and its denial of a downward departure based upon § 3B1.2 is affirmed.

**C.**

---

4    While defense counsel objected to the portion of the PSR that maintained that Willis arranged the drug transaction with Harrell, she lodged no objection to this statement and we therefore deem it conceded.

Finally, Willis contends that his sentence was substantively unreasonable because the district court relied too heavily upon the sentencing guidelines and did not pay sufficient attention to the factors set out in 18 U.S.C. § 3553(a) when imposing its sentence.

At sentencing, counsel for defendant argued for a sentence of sixty months of incarceration based on several factors: Willis' relatively small-time drug-dealing; his own drug addiction; his disrupted childhood; his financial support of his five children; and his employment as a janitor since 2007. The district court gave the following response:

> The court has considered the 3553(a) factors, and just to put them on the record, the nature and circumstances of the offense, it's a serious offense. History and characteristics of the Defendant, he does have prior convictions, multiple prior convictions in drug cases. There's a need for the sentence to reflect the seriousness of the offense and promote respect for the law, provide just punishment and afford adequate deterrence. Based upon what the Court's seen, also a need to protect the public from further crimes of the Defendant. The court also finds the Defendant is in need of medical care through the drug treatment program offered by the Bureau of Prisons . . . .

On appeal, Willis adds that his co-defendants received markedly lighter sentences, although they had greater culpability. *See* 18 U.S.C. § 3553(a)(6) (need to avoid unwarranted sentencing disparities among defendants with similar conduct).

Sentences within the advisory range are presumed to be reasonable. *United States v. Vonner*, 516 F.3d 382, 389-90 (6th Cir. 2008) (en banc). In fact, we have never found a sentence imposed within the advisory guidelines range to be unreasonable, although we have upheld a sentence less than the guidelines range. *United States v. Grossman*, 513 F.3d 592, 598 (6th Cir. 2008). As long as the district court recognizes that the guidelines are advisory, considers the § 3553(a) factors, and

9

adequately explains the chosen sentence, we will reverse only if we detect an abuse of discretion. *Id.* at 595.

Here, the district court considered "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and went so far as to tell defense counsel at the close of her presentation of these factors that she was "doing an outstanding job on behalf of [her] client." The sentence imposed, which includes an extensive substance abuse program, reflects the district court's awareness that Willis' life has been undermined by narcotics and the need to provide him with appropriate "corrective treatment." 18 U.S.C. § 3553(a)(2)(D). However, the court must also balance a defendant's personal characteristics against the seriousness of the offense, the need for deterrence, and protection of the public. 18 U.S.C. § 3553(a)(2)(A)-(C). As we have noted, when fashioning a sentence "district court judges are involved in an exercise of judgment, not a ritual." *Grossman*, 513 F.3d at 595. Here the district court provided an adequate explanation for the sentence that it imposed, which is, in our view, substantively reasonable.

### III.

The judgment is **affirmed.**